18 N.J. Super. 163 (1952)
86 A.2d 795
CHESTER MARCHITTO, PLAINTIFF-APPELLANT,
v.
THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, A CORPORATION ET ALS., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 11, 1952.
Decided February 26, 1952.
*164 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Archie Elkins argued the cause for the plaintiff-appellant.
Mr. William F. Hanlon argued the cause for the defendant-respondent.
The opinion of the court was delivered by EASTWOOD, J.A.D.
This appeal presents the question: Is plaintiff's action for additional earnings claimed under *165 a collective bargaining agreement existing between the defendant railroad and the Brotherhood of Railroad Trainmen, maintainable in our state courts? The Law Division decided it in the negative, holding that the National Railroad Adjustment Board established by authority of the Railway Labor Act, 45 U.S.C.A. 151 et seq., has exclusive jurisdiction and dismissed the complaint.
Section 153 of the Railway Labor Act provides:
"(a) That the said Adjustment Board shall consist of thirty-six members, eighteen of whom shall be selected by the carriers and eighteen by such labor organizations of the employees, * * *.

* * * * * * * *
(i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * *, shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board * * *."
It is obvious that if plaintiff is to succeed, he must rely upon the terms of the bargaining agreement, because his action is based thereon. He argues that its provisions are clear and unambiguous; therefore, he does not seek an interpretation or construction thereof, but relies "upon the same as it exists." Thus, it is apparent that the issue cannot be decided without reference to and ascertainment of the meaning and purpose of its pertinent parts. It follows, of course, that such a necessary procedure would involve its interpretation and construction.
The further contention is made by the plaintiff that the major purpose of the act is to avoid a severance of interstate commerce traffic, from which premise he argues that the severance of interstate commerce is not nor could it be conceivably at stake here, citing Elgin, &c., R. Co. v. Burley, 325 U.S. 711 (1945), and other decisions in support thereof. The cases cited by the plaintiff all antedate the case of *166 Slocum v. Delaware, L. & W.R. Co., 339 U.S. 239, 94 L.Ed. 795 (1950), hereinafter discussed. It may be that such a situation does not actually appear in the instant case, but it is common knowledge that a refusal by a railroad to comply with such a demand of an employee and other disagreements between a railroad and individual employees have caused strikes resulting in a severance of interstate commerce.
Additionally, plaintiff contends that "the case sub judice is one for money damages only; that in no wise does it affect the future labor relationship of himself or any other employees." We think that it is reasonably within the realm of probability that there are other individual employees who may be now, or in the future, similarly situated and who will be affected by the determination of this action. Can it, therefore, be successfully asserted that a determination of this issue will not disturb the future relationship of the railroad and its employees and result in a rupture of the employer-employee relationship, thereby causing a severance of interstate commerce? We think not.
In determining the question of the propriety of the trial court's action, we are bound by the decision in the Slocum case, supra, holding:
"In this case the dispute concerned interpretation of an existing bargaining agreement. Its settlement would have prospective as well as retrospective importance to both the railroad and its employees, since the interpretation accepted would govern future relations of those parties. This type of grievance has long been considered a potent cause of friction leading to strikes. It was to prevent such friction that the (May 20,) 1926 Act provided for creation of various Adjustment Boards by voluntary agreements between carriers and workers. 44 Stat. 577, 578, ch. 347. But this voluntary machinery proved unsatisfactory, and in 1934 Congress, with the support of both unions and railroads, passed an amendment which directly created a national Adjustment Board composed of representatives of railroads and unions. 48 Stat. 1189-1193, ch. 691. The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements. The Adjustment Board is well *167 equipped to exercise its congressionally imposed functions. Its members understand railroad problems and speak the railroad jargon. Long and varied experiences have added to the Board's initial qualifications. Precedents established by it, while not necessarily binding, provide opportunities for a desirable degree of uniformity in the interpretation of agreements throughout the nation's railway systems.

* * * * * * * *
Our holding here is not inconsistent with our holding in Moore v. Illinois Cent. R. Co., 312 U.S. 630, 85 L.ed. 1089, 61 S.Ct. 754. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. If a court in handling such a case must consider some provision of a collective-bargaining agreement, its interpretation would of course have no binding effect on future interpretations by the Board."
In the case of Order of Railway Conductors of America v. Southern Railway Company, 339 U.S. 255; 94 L.Ed. 811 (1950), decided the same day, the rule of the Slocum case was adopted. In the Southern Railway case, "a dispute arose between certain conductors and the railroad concerning the railroad's obligation under the collective bargaining agreement to give conductors extra pay for certain services" and the court held that "for reasons set out in the Slocum case, 339 U.S. 239, ante, 795, 70 S.Ct. 577, * * * the South Carolina state court was without power to interpret the terms of this agreement and adjudicate the dispute." In New Jersey, in the case of Piscitelli v. Penna.-Reading Seashore Lines, 11 N.J. Super. 46 (App. Div. 1950), the rule laid down in the Slocum case was held to be controlling.
Plaintiff asserts further that his "* * * cause of action is a property right under which plaintiff is entitled to be heard in a court of law on the merits of his claim" and that "a construction of the railway labor act that the board has exclusive jurisdiction, and holding that Slocum v. *168 Delaware, L. & W.R. Co., supra, gives this Board jurisdiction, is unconstitutional." We differ with plaintiff's contention. The plaintiff is not deprived of any of his property rights without due process of law. On the other hand, as is stated in the Slocum case, the plaintiff is afforded a substantial right before an experienced tribunal "well equipped to exercise its congressionally imposed functions. Its members understand railroad problems * * *" and "long and varied experiences have added to the Board's initial qualifications." It is significant, too, that although the amendment creating the National Railway Adjustment Board "with the support of both unions and railroads" (Slocum, supra) was adopted in 1934, and numerous questions involving its provisions have received the consideration of the United States Supreme and Federal Courts, its constitutionality had not been successfully challenged. See Virginia Ry. Co. v. System Federation No. 40, 300 U.S. 515, 558, 559, 81 L.Ed. 789, 805, 806 (1936), for a discussion thereof. That the Federal Congress has a right to regulate interstate commerce has been repeatedly upheld by our United States Supreme Court. It was so held in the case of Northern Pacific Railway Co. v. Washington ex rel. Atkinson, 222 U.S. 370, 56 L.Ed. 237, 239, 240 (1912), wherein the court stated: "* * * as the enactment by Congress of the law in question was an assertion of its power, by the fact alone of such manifestation that subject was at once removed from the sphere of the operation of the authority of the state." Cf. Texas & N.O.R. Co. v. Brotherhood Ry. & S.S. Clerks, 281 U.S. 548, 74 L.Ed. 1034 (1929).
In addition to plaintiff's action against the railroad, his complaint embraced other counts seeking damages against the Brotherhood of Railroad Trainmen and Dennis A. Giles, general chairman of the general grievance committee of the Brotherhood of Railroad Trainmen, Central Railroad of New Jersey system. Strictly speaking, the trial court's action is not appealable, in that more than one claim for relief is presented by plaintiff's complaint, and the trial court's disposition *169 being for less than all of the claims, fails to expressly determine "that there is no just reason for delay and upon an express direction for the entry of a judgment." See Rule 3:54-2, which provides:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more, but less than all of the claims, only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."
This question was not raised by the railroad, nor is it discussed in either brief. However, in view of the fact that the rule when applicable, as here, is frequently overlooked, we think it essential to direct attention to its provisions and salutary purpose.
Affirmed, with costs.