75 N.J. Super. 517 (1962)
183 A.2d 486
JOHN J. McGINNIS, PLAINTIFF-RESPONDENT,
v.
BROTHERHOOD OF RAILWAY AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, DEFENDANT, AND RAILROAD PERISHABLE INSPECTION AGENCY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 12, 1962.
Decided July 3, 1962.
*518 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Joseph A. Davis argued the cause for appellant (Messrs. O'Mara, Schumann, Davis & Lynch, attorneys).
Mr. Charles J. Kahwaty argued the cause for respondent.
GOLDMANN, S.J.A.D.
Defendant Railroad Perishable Inspection Agency (hereinafter company) appeals by leave of this court from an interlocutory Law Division order denying its motion to dismiss the complaint. The allegations of the complaint may briefly be summarized as follows:
Plaintiff alleged that he was a member in good standing of Local No. 309 of defendant Brotherhood (hereinafter union) and had been employed by defendant company since *519 November 1948 as a cooper. He was listed on the seniority roster, pursuant to the terms of the company-union collective bargaining agreement. That agreement provided that in case of work force reductions "seniority shall govern," and "furloughed employees shall be called to service in the order of their seniority."
Defendant claims that he was furloughed on December 24, 1957; that on August 4, 1960 employees junior in seniority were recalled, and that both defendants knew of this at the time. Plaintiff wrote the union on December 26, 1960 objecting to the violation of the terms of the collective bargaining agreement. Shortly after, on December 30, the company abolished the position of cooper, allegedly in bad faith, contrary to the terms of the agreement and in conspiracy with the union. The complaint further stated that the company refused plaintiff's demands to be reimbursed for the period that junior employees were recalled to service in his stead, and that the union had failed properly to protect his interest and had refused to take the necessary steps to remedy the violation.
Plaintiff demanded judgment (a) awarding him damages for the period August 4 through December 30, 1960; (b) determining that his position had been abolished in bad faith and in violation of the agreement; (c) determining that the union was negligent and had failed to fulfill its duties as plaintiff's authorized representative; (d) determining that both defendants had conspired to preclude plaintiff from being recalled to his job; (e) awarding damages for the period August 4, 1960 to date; (f) compelling defendants to reinstate plaintiff in his employment; (g) awarding costs; and (h) awarding compensatory and punitive damages.
Defendant company then moved to dismiss on the ground that the court lacked jurisdiction of the subject matter, exclusive jurisdiction being vested in the National Railroad Adjustment Board. The trial judge denied the motion for the reason that the complaint did more than allege a *520 grievance cognizable by the Board, since it charged tortious conduct on the part of the company and the union. We granted the company's application for leave to appeal. Our consideration of the matter must necessarily be limited to those aspects of the case involving the company.
Plaintiff claims that he was aggrieved when, in violation of the collective bargaining agreement, his seniority standing was ignored and junior employees recalled to service on August 4, 1960. His demand for damages from August 4 to December 30, 1960 is obviously based on that contention. The law controlling this aspect of the case is settled. Plaintiff should have pursued his administrative remedies under the Railway Labor Act, 45 U.S.C.A., § 151 et seq.  and see, in particular, the provisions of § 153(i). Pennsylvania R. Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959); Slocum v. Delaware, L. & W.R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); Marchitto v. Central R. Co. of N.J., 18 N.J. Super. 163 (App. Div. 1952), certification denied 9 N.J. 403 (1952) [Marchitto I] (and cf. Marchitto v. Central R. Co. of N.J., 9 N.J. 456 (1952) [Marchitto II]; but cf. Piscitelli v. Penna.-Reading S.S. Lines, 11 N.J. Super. 46 (App. Div. 1950)). Under 45 U.S.C.A., § 153(i), plaintiff's claim to seniority consideration was a dispute "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions."
This claim was also cognizable as a grievance under an agreement dated August 21, 1954 to which the company and the union were signatories. Article V of that agreement provided for a complete grievance procedure, in three steps, leading up to the National Railroad Adjustment Board. The doctrine of the exhaustion of administrative remedies is strongly established in New Jersey, and was reviewed in Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541, 556 et seq. (1958). Under our law, plaintiff was required to show that he had exhausted his administrative remedies in order to sustain any action to recover damages for the *521 August 4 to December 30, 1960 period. Transcontinental and Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953).
We hold, therefore, that the Law Division did not have jurisdiction over plaintiff's demand for damages for the period from August 4, 1960 to December 30, 1960, when the position of cooper was abolished by the company.
Plaintiff also claims damages against the company for the period following December 30, 1960 because his position was abolished in bad faith. He also seeks reinstatement. In effect, these contentions reflect a claim of illegal discharge. However, nowhere in the complaint does the plaintiff accept the company's action as a discharge and his separation from employment as final. Indeed, that pleading presents an odd mixture of tort claim and a claim of rights under the collective bargaining agreement. Plaintiff could have accepted the company's abolition of his position and equated it with a discharge, as in Moore v. Illinois Central R.R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941).
However, he cannot seek relief in our courts for the alleged illegal discharge, but must first exhaust his remedies under the collective bargaining agreement, the sole basis for any claimed cause of action. As was said in Jorgensen, above, 25 N.J., at page 559, without this agreement plaintiff would have no recourse in the event of discharge with or without cause. (The Transcontinental and Western Air case, cited above, compels us to look to the law of our own jurisdiction as to the exhaustion of administrative remedies.) And even if, as Jorgensen indicated, the exhaustion doctrine were not applicable, a reasonable interpretation of the company-union contract would limit plaintiff to such rights as the contract gave him.
His claim for damages based on the allegation that the company conspired with the union to preclude him from being recalled to his position on August 4 stands on a different footing. Plaintiff here alleges a common law right of action, grounded in tort  conspiracy to deprive him of *522 his contractual rights, and actual deprivation of his rights. Such an action may be pursued in our courts. Cf. Moore v. Illinois Central R.R. Co., above. And see the interpretation given the Moore holding in Slocum v. Delaware, L. & W.R. Co., and Pennsylvania R. Co. v. Day, above.
Accordingly, we conclude that the Law Division had no jurisdiction to consider plaintiff's claims for damages, either before or after December 30, 1960. It did have jurisdiction of the conspiracy claim. The matter is remanded to the trial court for the entry of an order conformable with this opinion.