**APPLETON ELECTRIC COMPANY, Plaintiff,**

v.

**EFENGEE ELECTRICAL SUPPLY COMPANY, Defendant.**

**No. 68 C 23.**

United States District Court
N. D. Illinois, E. D.
Sept. 26, 1968.

Jon L. Liljequist, Chicago, Ill., and E. C. Vandenburgh, Darbo, Robertson and Vandenburgh, Arlington Heights, Ill., for plaintiff.

George N. Hibben, Hibben, Noyes and Bicknell, Chicago, Ill., for defendant.

MEMORANDUM OPINION

DECKER, District Judge.

Appleton Electric Company (hereinafter "Appleton") owns patent number 2,917,263, entitled "electrical fixture fastener." Defendant Efengee Electrical Supply Company (hereinafter "Efengee") sells fasteners within this district which allegedly infringe this patent. In response to the complaint, the defendant asserts that plaintiff did not acquire a valid patent because of obviousness. As no substantial factual questions are presented, both sides have moved for summary judgment. Since plaintiff's patent fails to meet the requirements of 35 U.S.C. § 103, I grant Efengee's motion.

Patent 2,917,263 covers a sheet metal device, commonly referred to as a "bar hanger," which may be attached to building studs for the suspension of an electrical outlet box.[1] The transverse metal bar has flanges at both ends which may be positioned against the wood supports and attached thereto by way of a metal prong which is a part of the flange.[2] This prong is curved so that it will penetrate the wood when hit with a hammer, thus securing the fastener.

Plaintiff alleges infringement only with respect to claims three and five of the patent. These paragraphs [3] describe the metal prongs as being struck from the flange in such a manner that the fastener does not substantially shift position when the prong is driven into the support, allegedly because the length of the shank from the hinge is about equal to the distance from the hinge to the point where the toe of the prong enters the wood.[4]

The patent examiner originally rejected the Appleton application because the prior art included all aspects of the bar hanger. Plaintiff then twice amended its application, asserting its particular construction of the prong so that the fastener will remain stationary. Thus, the crucial inquiry is whether this prong is patentable. After discussing the prior art, the opinion will consider the level of ordinary skill in the pertinent art, as required by Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

## I. *Prior Art*

### A. *Background*

Except for the specific dimensions of the prong, all aspects of the fastener were disclosed in the prior art.

Austin patent 2,233,334 provided prongs for temporarily fastening an electrical fixture in place on building joists.[5] Plaintiff made no invention in substituting retracted prongs, such as

1. A copy of the patent is attached as exhibit 1.

2. See figures 1 & 3 in diagram 1 in the appendix.

3. Specifically, the patent covers:
"a pair of L-shaped nailing prongs one struck from each flange, * * * each of said prongs including a shank portion * * * having a length about equal to the distance between the hinge point and the initial point of entry of the toe portion into the support so that the prong pivots about the hinge point while said prong is driven into the support * * *" (claim #5) * * * "so that * * * said toe * * * [enters] the support without exerting substantial force on the member tending to shift it from the original placement on the support." (claim #3).

4. See figure 3 in diagram 2 in Appendix.

5. The use of prongs to anchor outlet box supports was also illustrated in the following patents: Dedge 2,423,757; Atkinson 2,316,389; and McKinley 2,732,162.

those in the Barnett patent 1,850,616, for those shown in Austin's diagrams. Similarly, McKinley patent 2,732,162 demonstrated a sheet metal outlet box support with telescoping, adjustable sections having end flanges with sharpened studs and a nail for anchoring the device.[6]

*B. The Prong*

The general design of the prong claimed by plaintiff was also old in the art. A man skilled in the art would have quickly realized that it was adaptable for use with adjustable outlet box supports.

For example, the Dedge patent 2,423,-757, granted in 1947, showed L-shaped prongs which have a shank and a pointed toe portion, positioned so that the box can be placed dircetly against the wall and the prongs hit with a hammer.[7] As stated in the patent:

> "One improvement which I have in mind is the provision of temporary setting and anchoring elements. These are denoted by the numerals 10. They are struck-out fingers or tongues Whose free ends 11 are laterally bent to provide spurs such as are designed to be projected by a blow from a hammer or a hammer against a tongue to fasten the same in the ceiling as shown for example in Figure 2." Column 2, lines 20–29.

Moreover, the Goldner patent 1,386,468 discloses a "Combined Bracket and Fastener" which has a similar L-shaped prong to secure the device.[8]

*II. Plaintiff's Patent*

The contribution to knowledge by the instant patent was minimal. Plaintiff specified the dimensions of the prong, alleging that the bar hanger would not move if the distance of the shank from the hinge were about the same as the distance from the hinge to the point of entry of the toe. Serious doubt exists whether even this contribution was novel, since the diagrams accompanying the Goldner and Dedge patents illustrate prongs which have these approximate dimensions. Assuming that plaintiff's contribution was new in this one respect, however, it was only the application of elementary geometrical principles to an old and widely known design for a fastening prong.[9]

*III. Level of Ordinary Skill in the Pertinent Art*

There are no affidavits or other evidence concerning the level of skill. Nevertheless, the numerous patents dealing with fastening devices which may be used to mount electrical outlet boxes demonstrate considerable awareness among the trade of possible refinements.[10] Prior art contains patents over forty years old and several within the past fifteen years.

6. The Seely patent 2,804,797 also illustrated prongs formed from a tubular body and adapted to be forced outwardly through openings to engage a supporting wall. In addition, adjustable mounting supports for outlet boxes were demonstrated in Buckels patent 2,528,418, Atkinson patent 2,316,389 and Knell patent 1,-982,957.

7. See diagram 3 in Appendix.

8. The patent declared:
"While the fastening means has been illustrated and described as used in connection with shade roller brackets, it is understood that the same is merely illustrative of one use of which the invention may be adapted." Page 2, column 1, lines 25–29.

9. In attempting to distinguish the Dedge patent, plaintiff stated: "the point of the Dedge prong is the hypotenuse of a right triangle of which shank 10 is one leg and, *as any schoolboy knows*, the hypotenuse must necessarily be longer than either of the two legs." (Emphasis added.) Similarly, the advantages of plaintiff's dimensions for the prong are common knowledge. See page 299 *infra.*

10. The following patents exemplify the advanced state of the art: Appleton patent 2,945,661; Atkinson patent 2,316,389; Knell patent 1,982,957; Crecelius patent 1,299,556; Rudolph patent 2,809,002; and, Budnick patent 3,104,087.

*IV. Obviousness*

In its 1952 amendment of the patent law, Congress enacted 35 U.S.C. § 103 which declares:

> "A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

Rather than altering patent law, this section approved existing judicial precedents.

In the Senate and House Reports, the legislature explained one effect of the statute:

> "An invention which has been made, and which is new in the sense that the same thing has not been made before, may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent." [11]

Applied to the instant patent, section 103 prevented plaintiff's patent number 2,917,263 from being valid. In light of the prior art, construction of a prong which does not jostle the bar hanger while being driven into the support was obvious to anyone with ordinary skill in the art. See Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Gass v. Montgomery Ward & Co., 387 F.2d 129, 132 (7th Cir. 1967). Moreover, it would also have been apparent to anyone familiar with the rudimentary principles of plane geometry which may be acquired in junior high school. Appleton merely observed that the bar hanger would not move so long as the prong pivoted around the hinge point, rather than entering the support at an oblique angle.[12]

This conclusion does not conflict with the statutory presumption of the validity of the patents, 35 U.S.C. § 282. Since the Patent Office failed to cite either the Dedge patent 2,423,757 or the Goldner patent 1,386,468, the presumption is not applicable. T. P. Laboratories, Inc. v. Huge, 371 F.2d 231, 234 (7th Cir. 1966); Novo Industrial Corporation v. Standard Screw Company, 374 F.2d 824, 827 (7th Cir. 1967).

*IV. Conclusion*

Since plaintiff's patent number 2,917,263 fails to meet the requirements of 35 U.S.C. § 103, I have entered an order today granting summary judgment for the defendant and denying plaintiff's motion for summary judgment.

11. S.Rep. No. 1979, 82d Cong., 2d Sess. 6 (1952); H.R.Rep. No. 1923, 82d Cong., 2d Sess. 7 (1952) U.S.Code Cong. & Admin.News, p. 2399.

12. Compare the Supreme Court's discussion of the patentee's claim in *Graham*: "Certainly a person having ordinary skill in the prior art, given the fact that the flex in the shank could be utilized more effectively if allowed to run the entire length of the shank, would immediately see that the thing to do was what Graham did, *i. e.*, invert the shank and the hinge plate." 383 U.S. 25, 86 S.Ct. 697.

300

APPENDIX

Exhibit 1

*Diagram*

Dec. 15, 1959 N. A. APPLETON ET AL 2,917,263

ELECTRICAL FIXTURE FASTENER

Filed Feb. 27, 1957

Fig. 1
Fig. 2
Fig. 3
Fig. 4
Fig. 5
Fig. 6
INVENTORS
NORTON A. APPLETON
ARTHUR I. APPLETON
by: Carlson, Pitzner, Hubbard & Wolfe
ATTYS.

# United States Patent Office

2,917,263
Patented Dec. 15, 1959

2,917,263

## ELECTRICAL FIXTURE FASTENER

Norton A. Appleton, Chicago, and Arthur I. Appleton, Northbrook, Ill., assignors to Appleton Electric Company, Chicago, Ill., a corporation of Illinois

Application February 27, 1957, Serial No. 642,858

7 Claims. (Cl. 248—216)

This invention relates to electrical fixtures and more particularly to a bar hanger for supporting electrical outlet boxes or the like between spaced wooden building members such as floor joists or wall studs.

Of the various known types of bar hangers, one which offers particular advantages by reason of employing a novel, extensible arrangement so that its length may be adjusted to different stud or joist spacings, is illustrated in the co-pending application of Arthur I. Appleton, Serial No. 597,242, filed July 11, 1956. When installing this type of hanger, ordinarily the workman holds the hanger in position by hand while hammering nails which provide permanent fastening means, through the ends of the hanger into the wooden building members.

The general object of this invention is to provide a retainer for fastening an electrical fixture, such as an outlet box, in place on building joists or studs. A related object of the invention is to provide an integral nailing prong for fastening a member to a wooden support.

It is a more specific object of the invention to provide an outlet box support with a retainer formed as an integral nailing prong bent such that with the fixture held against the studs or joists, the nailing prong may be given a light blow as by a hammer to drive the toe of the prong which is sharpened into the surface of the wooden members. Permanent nails may then be installed, and particularly in overhead installation and awkward ceiling work, a saving in time and reduction in cost of installation results.

Another object is to form the integral nailing prong by striking the same out of flat sheet material such as is provided by the end flange of the bar hanger support for the box. A further object is to provide an integral nailing prong wherein the sharpened point of the toe of the prong lies substantially within the opening in the sheet material left by the metal removed therefrom to make the prong. Thus the nailing prong is protected against being broken off or bent during shipment or handling. Moreover, due to the point being shielded or concealed, the danger of injury to workmen from cuts or scratches is reduced.

A further object is to provide a construction for the fixture retainer which is inexpensive to manufacture yet which is durable and sturdy so as to be satisfactory under conditions of rough handling to which devices of this general type are frequently exposed.

Other objects will appear from the following description taken in connection with the accompanying drawings wherein:

Figure 1 is a perspective view of a bar hanger constructed in accordance with the present invention;

Fig. 2 is a view in side elevation of the bar hanger shown in Figure 1, supported between floor joists or wall studs;

Fig. 3 is an enlarged fragmentary perspective view of the integral nailing prong formed in the end flanges of the bar hanger of the previous figures;

Fig. 4 is a sectional view illustrating the nailing prong

embedded in the wood of a wall stud or floor joist and taken through the median line of the end flange and hanger; and

Figs. 5 and 6 are views in end elevation and transverse section illustrating the end flange of the bar hanger and the integral nailing prong.

While the invention has been described in connection with the preferred embodiment, it will be understood that it is not intended to be limited to such embodiment but is intended to include all modifications, alternative constructions and equivalents which are included within the spirit and scope of the appended claims.

Referring to the drawings, the present invention is shown embodied in an extensible bar hanger having telescoping sections **11**, **12** and a hanger stud **13** which is employed for holding an outlet box **14** or the like electrical fixture in place. This hanger stud **13** also serves for locking the telescoping sections together so as to fix the overall length of the hanger. The hanger also has end flanges **15*a***, **15*b*** provided with openings **16*a***, **16*b*** for receiving nails for permanently fastening the hanger between wooden building members such as floor or ceiling joists or wall studs **17*a***, **17*b*** as indicated generally in Fig. 2.

In carrying out the invention, the outlet box **14** is temporarily fastened in place on the joists or studs **17*a***, **17*b*** by means of an L-shaped nailing prong or retainer **18*a***, **18*b*** which, as shown in Figs. 3 and 4, is struck out of deformable flat sheet material presented by that portion of the support for the box that lies adjacent the surface of the wooden building members. In the present instance the box **14** is supported by the bar hanger which has end flanges **15*a***, **15*b*** lying adjacent the joists or studs. The nailing prong **18*a***, **18*b*** is therefore struck out of the metal of the hanger ends, so that with the ends of the hanger held flat against the beam or stud on which the hanger is to be fastened, the bent prong may be given a light hammer blow and the toe portion **20**, **20*b*** of the prong which has a sharpened point **21*a***, **21*b*** driven into the surface of the wood for supporting the hanger. The hanger may be fixed in permanent position with ordinary nails. It is contemplated that the nailing prongs **18*a***, **18*b*** may be struck out in a punch press type forming operation, and thus at a relatively low cost added to the hanger construction.

For the purpose of strengthening the nailing prong, as appears most clearly in Figs. 3 and 6, the shank portion **19*a***, **19*b*** and toe portion **20*a***, **20*b*** thereof may be formed with a slight transverse curve so as to resist bending and retain substantially the original angular relation and form. As shown in Fig. 3, the shank **19*a*** of the L-shaped prong **18*a*** is integral with the end flange **15*a*** of the hanger and extends out of the plane of the surface of the flange with the toe portion curved back along an arc I struck from about the hinge point of the prong as shown in Figs. 2, 4 and 6, so that the point **21*a*** which is left sharpened from the forming die lies within the opening **22*a*** left in the material of the flange. The point is thus protected somewhat against being bent during shipping or other handling.

To insure that the point of the nailing prong will enter the wood of the supporting stud or joist at a proper angle, the free end of the toe portion **20*a***, **20*b*** of the nailing prong **18*a***, **18*b*** is shown herein carried so as to enter an adjacent wooden member at substantially right angles to the face or surface of the member. This angular relation is shown in Fig. 6. In order to hammer the prong into the wood, the prong should be struck by blows directed substantially parallel to the toe, as herein shown at about right angles to the wooden support, although the particular angle would vary according to the angle the toe is carried by the shank. Due to the curved

configuration of the toe and shank, however, as the nailing prong **18a**, **18b** is driven into the member the point **21a**, **21b** of the nailing prong describes an upward curve defined by the arc I. As illustrated in Fig. 4, with the toe portion **20a** and point **21a** completely embedded, the shank portion **19a** of the nailing prong lies substantially in the plane of the end flange **15a**. It is a feature of the present invention that the embedded nailing prong offers substantial resistance to removal from the wood while yet enabling removal by prying as with a screwdriver or claw hammer. As will be observed, the curved nailing prong **18a** under normal conditions retains substantially the same "set" placed in it by the forming die while it is being driven into the wooden supporting member, pivoting about its hinge without exerting substantial force on the bracket tending to shift it from the original placement on the support. The shank portion **19a** on the other hand lies substantially flat against the outer surface of the wood, having lost substantially all the "set" placed in the prong by the forming die. The toe portion to be extracted from the wood is required to describe a curved withdrawing path which the flat configuration of the flanged ends of the bar hanger prevents. Thus the nailing prong clamps the flange to the stud or joist and temporarily yet securely holds the hanger in position. The nail openings **16a**, **16b** in the end flanges and on each side of the nailing prong are provided for receipt of ordinary nails which may be driven in place to hold permanently the fixture in position.

It will be readily appreciated that in installing an outlet box with a bar hanger having the retainer means of the present invention, after having obtained the adjustment in length to accommodate the particular stud or joist spacing involved, with one hand the bar hanger is held in place with the flat outer surface of one end flange against the surface of the respective floor joist or stud. The workman then with a hammer may strike the end of the hanger a sharp blow to drive the nailing prong into the wood, repeating this operation to fasten both ends of the bar hanger. Particularly in awkward ceiling work in overhead installation between joists, once the bar hanger has been supported in place by means of the integral nailing prongs, both hands are left free so that permanent fastening devices may also be hammered into place using the nail openings **16a**.

We claim as our invention:

1. In an outlet box support made of sheet metal and adapted to be permanently installed against a wooden building member, a retainer for holding the support in place, comprising a nailing prong struck from the support, said nailing prong including a shank portion hinged to the support and a pointed curved toe portion angling from said shank to be driven into the surface of the wooden building member and at least partially embedded therein, said curved toe lying throughout its length along an arc struck from about the hinge point, said shank having a length equal to the distance between the hinge point of the shank and the initial point of entry of the toe into the building member, said toe portion as it enters the wooden building member describing a curve a tangent to which forms an included angle less than 90° relative to the shank so as to clamp the support to the wood.

2. A retainer for supporting an outlet box on a wooden building member comprising a nailing prong struck from a flat plate to leave an opening in the same, said flat plate providing means for mounting the box and supporting the same on the building member, said nailing prong including a shank portion formed integral with the plate and projecting from one surface of the plate, and a reversely curved toe portion angling from said shank on a uniform curve throughout its length, the free end of said toe lying at substantially right angles relative to said plate and within the opening in the plate so as to be drivable as by a hammer blow directed at right angles to the plate into the surface of an adjacent wooden building member, said toe portion as it enters the wood describing a curve a tangent to which forms an included angle less than 90° relative to said plate so as to clamp the latter to the wooden member.

3. An integral fastener for nailing a sheet metal member to a support, said member being positionable against the support, said fastener comprising a nailing tang struck from the sheet metal of said member leaving an opening therein, said fastener having a shank hinged at one end to the member so as to extend away from the support engaging side of the member carrying a transversely curved toe terminating in a tip and angled toward the support engaging side of the member so as to enter the support through said opening in the member, said shank having a length about equal to the distance between the hinge point of the shank and the initial point of entry of the toe into the support, so that the tang is pivotable freely about its hinge by hammer blows directed substantially parallel to the toe and struck to drive the toe into the support, the transverse curve in the toe strengthening the same so that it retains its set while being embedded, said toe entering the support without exerting substantial force on the member tending to shift it from the original placement on the support.

4. An integral fastener for nailing a member to a support, said member being positionable against the support, said fastener comprising a nailing tang struck from the member leaving an opening therein, said fastener having a shank hinged at one end to the member, a longitudinally and transversely curved toe terminating in a point, said toe being carried at the other end of said shank and angling toward the support engaging side of the member so that the free end thereof enters the support through said opening, said toe lying throughout its length along an arc struck from about the hinge point at the said one end of the shank, said shank having a length about equal to the distance between the hinge point of the shank and the initial point of entry of the toe into the support so that the tang pivots about its hinge point while the toe of said tang is hammered into the support traveling in a curved path defined by the same arc without exerting substantial force on the member tending to shift it from the original placement on the support, the transverse curve in the toe strengthening the same so that it retains the longitudinal curve while being embedded.

5. In a bar hanger for supporting an electrical box or the like between a pair of laterally spaced supports such as wooden joists or studs, a pair of coaxially connected elongated members adjustable relative to each other for changing the overall length of the hanger, said members being provided with flanges at opposite ends of the hanger formed substantially at right angles to the axis of the elongated hanger members and adapted upon lengthwise adjustment of the members for positioning against such spaced supports, a pair of L-shaped nailing prongs one struck from each flange leaving an opening therein and carried on the inside face of the flange so that said flange is positionable for installation directly against the support, each of said prongs including a shank portion formed integral with the respective flange so as to be hinged thereto and projecting inwardly away from the support engaging side of the flange, the shank portion of each prong carrying a pointed toe portion angled toward the opening in the flange so that the toe portions of the prongs are drivable outwardly of the flanges through the respective openings into the supports by hammer blows on the prong directed substantially parallel to the toe portion thereof whereby said prongs when embedded lie substantially parallel with the axis of the hanger, the shank portion of each prong having a length about equal to the distance between the hinge point and the initial point of entry of the toe portion into the support so that the prong pivots about the hinge point while said prong is driven into the support, the toe of each prong having a

strengthening transverse curve so that it retains its shape while being driven into the support.

6. In an outlet box support having flanges adapted to be permanently fastened to a wooden building member for supporting the box, a retainer comprising, in combination, a nailing prong having a shank hinged to one of said flanges and extending out of the plane of said one flange in a direction away from the support engaging side thereof, said shank having a curved sharpened toe portion angled so as to be drivable into the surface of an adjacent building member and embedded therein, said shank having a length about equal to the distance between the hinge point of the shank and the initial point of entry of the toe into the member, said curved toe lying throughout its length along an arc struck from about the hinge point so that the prong pivots about the hinge point while being driven into the member without exerting substantial force on the flange tending to shift it from the original placement on the member.

7. In an extensible bar hanger having cooperating elongated members and means for locking said elongated members together to fix the overall length of the hanger,

said members having end flanges and being adapted to be positioned between spaced wooden building members with the outside face of each flange abutting one of the building members, a retainer device comprising, in combination, an L-shaped nailing prong struck from each of the end flanges and carried on the inside face of the flange so that said flange is positionable for installation directly against the building member, each prong having a shank portion hinged to the respective flange and extending at an acute angle with respect to the latter, and a pointed toe portion angling from the shank toward the flange so as to be drivable into the surface of the adjacent building by hammer blows on the prong and directed substantially parallel to the toe.

**References Cited in the file of this patent**

UNITED STATES PATENTS

| | | |
|---|---|---|
| 1,850,616 | Barnett | Mar. 22, 1932 |
| 2,233,334 | Austin | Feb. 25, 1941 |
| 2,732,162 | McKinley | Jan. 24, 1956 |
| 2,804,797 | Seely | Sept. 3, 1957 |

Diagram 2

Dec. 15, 1959 N. A. APPLETON ET AL 2,917,263

ELECTRICAL FIXTURE FASTENER

Filed Feb. 27, 1957

"A" is allegedly about equal to "B".
"A"
"B"
Fig. 1
Fig. 2
Fig. 3
Fig. 4
Fig. 5
Fig. 6

INVENTORS
NORTON A. APPLETON
ARTHUR I. APPLETON
by: Carlson, Pitzner, Hubbard & Wolfe
ATTYS.

Diagram 3 (page 1)

July 8, 1947. O. G. DEDGE 2,423,757

ADJUSTABLE OUTLET BOX SUPPORT

Filed Jan. 11, 1944 2 Sheets-Sheet 2

Fig. 4.
Fig. 5.
Fig. 6.
Fig. 7.

Inventor

Ottomus G. Dedge

By Clarence A. O'Brien and Harvey B. Jacobson Attorneys

Diagram 3
(page 2)

July 8, 1947.  O. G. DEDGE  2,423,757

ADJUSTABLE OUTLET BOX SUPPORT

Filed Jan. 11, 1944  2 Sheets--Sheet 1

Fig. 1.

Fig. 2.

Fig. 3.

Inventor

Ottomus G. Dedge

By Clarence A. O'Brien
and Harvey B. Jacobson
Attorneys