Argued and submitted April 7,
reversed and remanded May 19, 1971

# WAGNER, *Appellant, v.* COLUMBIA HOSPITAL DISTRICT ET AL, *Respondents.*

485 P2d 421

Donald L. Kalberer, Judge.

*William C. Grant*, Portland, argued the cause and filed briefs for appellant.

*Herbert G. Galton*, Portland, argued the cause for respondent Service Employees Union, Local No. 49. With him on the brief were Galton & Popick and Gary M. Galton, Portland.

*Jay W. Whipple*, St. Helens, argued the cause for respondent Columbia Hospital District. With him on the brief were Williamson & Whipple and David B. Williamson, St. Helens.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue, Howell and Bryson, Justices.

TONGUE, J.

This is an action for damages by a discharged employee against both her former employer and the union with which her employer had a labor contract. Plaintiff's complaint alleges that she was discharged for refusing to join the union, contrary to her religious beliefs. She also alleges that her discharge was the result of a "conspiracy" between the employer and union, with knowledge of her religious beliefs, and was in violation of her constitutional rights to religious freedom and her rights under the Civil Rights Act of 1964 (42 USCA § 2000), and ORS 659.020 and 659.030.

Both defendants filed motions to abate the action and to require that the matter be submitted to arbitration under the terms of the labor contract between plaintiff's employer and the union representing its employees. That contract, as attached to the motions, included both a "union security" provision, to the effect that employees who failed to join the union "shall be replaced," and also a provision requiring arbitration of any dispute "over any of the terms * * * of this agreement" and providing that the arbitration award "shall be final and binding upon all concerned."

Plaintiff appeals from an order allowing these motions and abating the action "pending compliance by plaintiff with her internal contractual remedies." Defendants moved to dismiss the appeal upon the ground that such an order was not an appealable order. That motion was denied by this court, with leave to renew that motion in briefs and on argument on appeal.

Defendants having now renewed that motion on this appeal, the first question to be decided is whether the order by the trial court granting defendants' motions to abate the action and to require plaintiff to

submit the matter to binding arbitration was an appealable order.

1. *An order to abate an action and to require arbitration as an appealable order.*

ORS 19.010 (2) provides:

"For the purposes of being reviewed on appeal the following shall be deemed a judgment or decree:

"(a) An order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein."

In *Winters et al v. Grimes et al*, 124 Or 214, 264 P 359 (1928), this court, after quoting from that statute, said (at p 216):

"\* \* \* unless the decree appealed from is a final decree within the meaning given to that word by the former decisions of this court and not interlocutory, this appeal must be dismissed. One of the tests in determining whether a judgment or decree is final is: 'If no further action of the court is required to dispose of the cause, it is final.' Other tests are: Is the order or decree one which determines the rights of the parties so that no further questions can arise before the court rendering it, except such as are necessary to be determined in carrying it into effect, or is the judgment or decree 'one which concludes the parties as regards the subject-matter in controversy in the tribunal pronouncing it'? This question has been so fully considered and decided with such finality that anything more than a mere citation of authorities could add nothing to what has been previously said by this court. [Citing cases]"

The question whether an order abating an action to require arbitration is an appealable order has never been decided by this court, but has been the subject of considerable litigation in other courts. See Annot.,

94 ALR2d 1071 and Annot., 99 L ed 241, 244. In most of the cases on this subject the parties to the litigation are the same as the named parties to the contract which includes the provision for arbitration. The federal courts, in a number of such cases, have held that orders abating common law actions for damages (as in this case) and requiring arbitration are final and appealable orders. See cases cited in 94 ALR2d (at 1072-4) and 99 L ed (at 244).[1] State court decisions, however, have been divided upon this question, depending largely upon the terms of the statutes involved. 94 ALR2d 1078.[2]

This case, however, involves at least four con-

---

[1] Thus, it has been held by the federal courts that an order to abate a common law action for damages so as to require an arbitration of the controversy is, in effect, the same as an injunction in a separate suit in equity to enjoin proceedings in such an action at law and is an appealable order, just as such an injunction would be an appealable order. See Wilson Brothers v. Textile Workers Union of America, 224 F2d 176, 177 (2d Cir), cert den 350 US 834, 76 S Ct 70, 100 L ed 745 (1955), a case cited by defendant union in this case, and Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 US 449, 452, 55 S Ct 313, 79 L ed 583 (1935), also cited by defendant union. See also Enelow v. New York Life Ins. Co., 293 US 379, 381, 55 S Ct 310, 79 L ed 440 (1935).

Other cases cited by defendant union are distinguishable as admiralty cases, in which the foregoing rule was not applied because courts of admiralty have no general injunctive powers. See Schoenamsgruber v. Hamburg American Line, 294 US 454, 55 S Ct 475, 79 L ed 989 (1935); In re Pahlberg Petition, 131 F2d 968 (2d Cir 1942); and Stathatos v. Arnold Bernstein S.S. Corp., 202 F2d 525 (2d Cir 1953). General Construction Co. v. Hering Realty Co., 286 F2d 641 (4th Cir 1961), also cited by defendant, was a suit in equity to foreclose a lien and is thus not controlling for similar reasons.

[2] Cases from California, New Jersey and Ohio reaching a contrary result are also cited by defendant union. Because of differences in the facts of those cases and in the statutory provisions involved, including statutes defining appealable orders and also statutes providing appeals from arbitration awards, we do not consider those cases to be persuasive authority.

siderations not present in the usual case: (1) plaintiff was not a named party to the contract involved in this case; (2) even though employees may normally be bound by the results of an arbitration under provisions of a labor contract, plaintiff was no longer an employee; (3) the Oregon statute providing for the enforcement of agreements to arbitrate and for abatement of court proceedings for that purpose specifically excludes from its operation any controversies "such as respect * * * the terms or conditions of employment under collective contracts between employers and employees or between employers and associations of employees" (ORS 33.210); and (4) the contention is made by the plaintiff in this case that the employer and union have "conspired" to violate her constitutional rights and that to submit this controversy to arbitration would be "futile" because both the employer and union have taken the position that under the terms of the contract she must be discharged and because plaintiff would have no right of appeal from the arbitration award to any court.

Aside from the first three of these considerations, we believe that if plaintiff is correct in her final contention it would necessarily follow that the order abating this action "pending compliance by plaintiff with her internal contractual remedies," as demanded by defendants, would be an order which would both "affect a substantial right" of plaintiff and also one which would "in effect determine the action or suit so as to prevent a judgment or decree therein" in favor of plaintiff.[9] This question, however, in-

---

[9] In addition, to adopt the reasoning of the federal courts in the cases cited in note 1, since this is an action at law for damages, the entry of an order abating such an action and remitting plain-

volves substantially the same considerations as are involved in the second question presented for decision in this case; namely, whether the trial court erred in entering such an abatement order, assuming that the order was an appealable order. We thus proceed to a consideration of that question.

2. *Abatement of action for damages for wrongful discharge so as to require arbitration.*

The authorities are divided upon the question whether an action by a former employee for damages for wrongful discharge may be abated so as to require the employee to exhaust the grievance procedures provided by a labor contract, including provisions for binding arbitration. See Annot., 72 ALR2d 1439.

There are good reasons why, in the ordinary case, contract provisions for arbitration should not be frustrated by the bringing of legal proceedings, particularly in the field of labor relations. Thus, as stated in *Republic Steel Corp. v. Maddox*, 379 US 650, 652-3, 85 S Ct 614, 13 L ed 580 (1965), at 652:

> "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. *If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available.* See Humphrey v. Moore, 375 US 335, 11 L ed 2d 370, 84 S Ct 363; Labor Board v.

tiff to an exclusive remedy by arbitration, from which she would ordinarily have no appeal, would be the same, in effect, as to issue an order by independent suit in equity enjoining such an action at law, which would be an appealable order.

Miranda Fuel Co., 326 F2d 172. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant. LMRA § 203(d), 29 USC § 173(d); § 201(c), 29 USC § 171(c) (1958 ed). Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And *it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.*

"A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' " (Emphasis added)

See also *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 US 574, 578, 80 S Ct 1347, 4 L ed 2d 1409 (1960).

1. It follows, in the "normal situation," that once an employer and union have by written contract agreed to submit to binding arbitration all disputes arising under the contract, a court may properly enter an order abating any legal proceedings brought by either party to the contract in an attempt to submit such a dispute to a court for decision.

2. Also, in the "normal situation," individual employees are bound by the terms of labor agreements between their employers and the unions who are their representatives, including contract provisions for arbitration. Thus, as held in *Henderson v. Eastern Gas and Fuel Associates*, 290 F2d 677 (4th Cir 1961), at p 680:

> "Where the collective bargaining agreement provides a grievance procedure leading to arbitration, individual employees must look to that procedure and are bound by it just as are unions and employers. They cannot bypass the method prescribed in the contract for obtaining relief, either by failing to exhaust the grievance procedure or by ignoring the determination reached by such procedure if they have exhausted it, and litigate the merits of their claims in court. This conclusion would seem to be required as a matter of substantive labor law by several recent Supreme Court decisions, United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424. * * *."

See also Annot., 72 ALR2d 1439, 1441-44. And see also *Peoples v. Southern Pacific Company*, 139 F Supp 783 (D Or 1955), aff'd 232 F2d 707 (9th Cir

1956), and *Local Union 89 v. General Telephone Co. of Northwest,* 431 F2d 957 (9th Cir 1970).

It follows that if the discharge of an employee is a grievance within the terms of the contract provisions for settlement of grievances, including binding arbitration as the ultimate remedy, such an employee will, in the "normal situation," be bound by such contract provisions.

As also held in *Henderson,* "it is the logical result of [this] rule that courts do not review the merits of a labor arbitration award." Indeed, it has been held by this court (although not in a labor arbitration case) that an arbitration award will not be reviewed by the court for errors of either fact or law. *Brewer v. Allstate Insurance Co.,* 248 Or 558, 562, 436 P2d 547 (1968).[4]

Such a rule, however, as applied to labor contracts, is based upon the assumption that the interests of the employee will be fairly represented by the union. On the other hand, when it is alleged in an action for wrongful discharge that plaintiff was discharged as the result of a "conspiracy" between the union and employer or that the union has not or will not perform its duty of "fair representation" of the employee, the courts have held that in such cases a discharged employee may maintain an action for damages for wrongful discharge and that such an action will not be abated so as to remit the discharged employee to a

---

[4] To the same effect, see Mahaffy v. Gray, 242 Or 522, 524-5, 410 P2d 822 (1966); Harrell v. Dove Mfg. Co., 234 Or 321, 325-6, 381 P2d 710 (1963); Jacob v. Pacific Export Lbr. Co., 136 Or 622, 644-5, 297 P 848 (1931); Hooper v. Pennick, 102 Or 382, 387, 202 P 743 (1921); and Gerdetz v. Central Oregon Irr. Co., 83 Or 576, 580, 163 P 980 (1917).

remedy in arbitration that would be futile in such a case.

Thus, as held in *Hiller v. Liquor Salesmen's Local No. 2*, 338 F2d 778 (2d Cir 1964), at p 779:

"It is true that the collective bargaining agreements contain arbitration clauses and that if this were simply a suit for wrongful discharge, the arbitration clauses would be available to the employers as a defense. Larsen v. American Airlines, Inc., 313 F. 2d 599 (2d Cir. 1963) ; Henderson v. Eastern Gas and Fuel Co., 290 F. 2d 677 (4th Cir. 1961). But *where the employee's case is based upon a conspiracy between his union and his employer to deprive him of his rights* he cannot be forced to submit that issue to an arbitration between the employer and the union. Such a procedure would fail completely to settle the issues between the union member and his union. It would entrust representation of the employee to the very union which he claims refused him *fair representation*, and it would present as adversaries in the arbitration procedure the two parties who, the employee claims, are joined in a conspiracy to defraud him." (Emphasis added)

To the same effect, in *Vaca v. Sipes*, 386 US 171, 87 S Ct 903, 17 L ed 2d 842 (1967), although involving a case in which a discharged employee alleged that the union arbitrarily refused to take his grievance to arbitration, the Supreme Court of the United States cited *Hiller* and other cases to the same effect with approval in holding as follows (at p 186):

"* * * we think the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance. * * *."

To the same effect, see *Glover v. St. Louis-San Francisco Railway Co.*, 393 US 324, 330, 89 S Ct 548, 21 L ed 2d 519 (1969); *Thommen v. Consolidated Freightways*, 234 F Supp 472 (D Or 1964); *Lusk v. Eastern Products Corp.*, 427 F2d 705, 708 (4th Cir 1970); *United Protective Workers v. Ford Motor Co.*, 194 F2d 997, 1002, 223 F2d 49, 51 (7th Cir 1955); and *McGinnis v. Brotherhood of Railway, etc., Clerks, etc.*, 75 NJ Super 517, 183 A2d 486, 489 (1962). Cf. *Woody v. Sterling Aluminum Products, Inc.*, 243 F Supp 755, 773-4 (ED Mo 1965); *Smith v. General Electric Company*, 63 Wash 2d 624, 388 P2d 550, 551-2 (1964). Cf. *Dewey v. Reynolds Metals Co.*, 291 F Supp 786 (WD Mich 1968); 300 F Supp 300 (1969), rev'd 429 F2d 324 (6th Cir 1970), as discussed in Edwards and Kaplan, Religious Discrimination and the Role of Arbitration Under Title VII, 69 Mich L Rev 599, at 641-654 (1971). See also 72 ALR2d 1445, including cases cited and Cox, Rights Under a Labor Agreement, 69 Harv L Rev 601, 631-2 (1956).

Indeed, as previously noted, even in *Republic Steel Corp. v. Maddox, supra* (as relied upon by defendant union in this case and decided prior to *Vaca v. Sipes, supra*), the Supreme Court of the United States recognized that while the general rule, as stated in *Maddox*, is applicable in the "normal situation," it may not apply "if the union refuses to press or only perfunctorily presses the individuals' claim." This court in *State ex rel Nilson v. Berry*, 248 Or 391, 395, 434 P2d 471 (1967), although approving the general rule of *Maddox*, also recognized (at pp 395-6), that *Vaca* stated such an exception to that rule.

To the same effect, defendant hospital district has

expressly recognized (by quoting from 48 Am Jur 2d, Labor & Labor Relations § 1306) that:

> "Even where a collective bargaining agreement subject to 29 USC Sec 185(a) establishes exclusive contractual remedies for the enforcement of contractual rights, an employee may sue without exhausting those remedies if the effort to proceed formally with contractual or administrative remedies would be wholly futile. *The futility of exhausting contractual remedies is established,* so as to permit a suit notwithstanding a failure to exhaust those remedies, *where the plaintiff shows* either that the employer has repudiated the contractual remedies or *that the union has breached its duty of fair representation* in handling the plaintiff's grievance. Absent a showing of futility, the failure to exhaust the contractual grievance procedures bars the suit * * *." (Emphasis added)

We do not agree, however, at least under the facts as alleged by plaintiff's complaint, with the further contention by that defendant that the plaintiff must first "utilize the grievance procedure to the point where she can claim the union did not give her fair representation as a condition precedent to her filing the lawsuit" and that "because the interest of the employee is adverse to the union and the employer, the employee cannot *speculate* and say that he cannot get a fair hearing without at least giving the union a chance to represent him."

On the contrary, under the rule of *Hiller*, as quoted above, as well as the other cases to the same effect, if the complaint of a discharged employee alleges facts from which it appears that the interests of the employee will not be fairly represented by the union in an arbitration proceeding, with the result that such a remedy would be useless and futile, a motion to

abate such proceedings (or a plea in abatement) to require the employee to submit his claim to arbitration, and which alleges that the parties have agreed to arbitration under the terms of a contract, will be denied. In such a case the trial court must then proceed to determine, by trial if necessary, whether plaintiff can prove the allegations of his complaint. Thus, the only remaining question is whether the pleadings in this case are such as to bring it within the rule of *Hiller*.

Plaintiff's complaint alleges that defendant union, knowing that to require plaintiff to join a union would require her to violate her religious beliefs, nevertheless notified defendant hospital district that she had not joined the union and did so for the purpose of causing her to be discharged from her job; that after receiving that notice defendant hospital association discharged her for failure to join the union, and that although both defendants knew that to join the union would violate her religious conviction, they "conspired together to require plaintiff to join the union or be fired." Defendants' motions to abate the action attach copies of the labor contract, including the union security provision and the provision for binding arbitration, and also attach the affidavit of a union officer that the union is ready to proceed with the arbitration, but that plaintiff has failed to do so.

3. It is not for this court to decide on this appeal whether or not the proof of the facts alleged in her complaint would entitle plaintiff to a judgment for damages. We hold, however, that the allegations of such facts are sufficient (subject to proof) to establish that for plaintiff to submit her claim of wrongful discharge to binding arbitration would be useless and

futile. We also hold that since plaintiff would be required to depend upon the union to represent her in such an arbitration despite the fact that the union, knowing of her religious beliefs had demanded her discharge, she could not expect "fair representation" of her interests by the union in such an arbitration proceeding.

4. It follows that the allegations of plaintiff's complaint are sufficient to bring this case within the rule of *Hiller*, with the result that it was error for the trial judge to enter an order abating this proceeding and requiring plaintiff to submit her claim to arbitration. For the same reasons, we hold that such an order was an appealable order because, if allowed to stand, it would have both "affected a substantial right" of plaintiff's and would also have "in effect determined the action" so as to prevent a judgment in plaintiff's favor in that action.

Both defendants, as well as plaintiff, have submitted authorities on the merits of the question whether, in view of the union security provision of the labor contract, plaintiff could properly refuse to join the union because of her religious beliefs and then bring an action for damages for wrongful discharge, including recovery of punitive damages.[9] That ques-

---

[9] Among cases cited by plaintiff are Dewey v. Reynolds Metals Co., 291 F Supp 786 (WD Mich 1968), and Sherbert v. Verner, 374 US 398, 83 S Ct 1790, 10 L ed 2d 965 (1963). Among cases cited by defendants are Cap Santa Vue, Inc. v. NLRB, 424 F2d 883 (DC Cir 1970); Stimpel v. California, 6 Cal App 3d 206, 85 Cal Rptr 797, cert den 400 US 952, 91 S Ct 245, 27 L ed 2d 258 (1970); and Linscott v. Millers Falls Co., 316 F Supp 1369 (D Mass 1970). It is also to be noted that on January 18, 1971, the Supreme Court of the United States granted certiorari in Dewey v. Reynolds Metals Co., *supra*, 401 US 932, 91 S Ct 566, 27 L Ed 2d 621 (1971), after the decision of the trial court had been reversed in 429 F2d 324 (6th Cir 1970). See also Edwards and Kaplan, *supra*, 69 Mich L Rev 599.

tion, however, must first be submitted to the trial court for decision, together with such evidence as may be relevant to all of the issues as framed by the pleadings of the parties, including the issue whether there has been a "conspiracy," as alleged by plaintiff and the issue whether the union has failed to perform its duty of "fair representation."

Reversed and remanded.