Charles **NEDD,** Dominic Iero, Max Dyno-
ski and Anthony Ganly, Members of
the Pensioned Anthracite Coal Miners
Protest Executive Committee, suing on
behalf of Themselves and All Other
Members of the Class of Pensioned An-
thracite Coal Miners and Widows of De-
ceased Pensioned Anthracite Coal Min-
ers

v.

**UNITED MINE WORKERS OF AMER-
ICA,** an unincorporated trade union
association, Appellant.

No. 16368.

United States Court of Appeals
Third Circuit.

Argued Oct. 20, 1967.

Decided Aug. 9, 1968.

Thomas N. O'Neill, Jr., Montgomery,
McCracken, Walker & Rhoads, Philadel-
phia, Pa. (Charles A. Wolfe, Philadelphia,
Pa., Edward L. Carey, Washington, D. C.,
on the brief; James W. Scanlon, Scran-
ton, Pa., of counsel), for appellant.

James S. Palermo, Hazleton, Pa.,
(William Bruno, Philadelphia, Pa., on
the brief), for appellees.

Before HASTIE, FREEDMAN and
SEITZ, Circuit Judges.

OPINION OF THE COURT

HASTIE, Chief Judge.

This case is here on an interlocutory
appeal, perfected under section 1292(b)
of title 28, United States Code, by a
defendant labor union from an order

denying it summary judgment on the pleadings and certain uncontradicted affidavits.

■ While the trial judge's certification approving this interlocutory appeal justified appellate review at this stage on the ground that the disputed question of jurisdiction under section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) might be decisive of the entire case, the appeal itself is not a review of a judicially stated or certified question. Rather it presents for review an order denying a motion for summary judgment and the appellate court must determine whether that order merits affirmance or reversal. The possibility that the review of the interlocutory order may turn upon a specified legal question may justify acceptance of immediate appeal, but it does not preclude the appellate court from affirming or reversing the order under review on some other ground. In this case, lack of jurisdiction under section 301(a), failure to state a claim upon which relief can properly be granted, lack of standing by the plaintiffs or any other legal issue involving no genuine factual dispute may be considered as possibly requiring that the defendant be granted summary judgment in accordance with its motion.

■ In their complaint, the plaintiffs describe themselves as retired and pensioned anthracite coal miners and assert that they sue on behalf of the "class of pensioned anthracite coal miners and widows" of such pensioners. Their suit is against their international union, United Mine Workers of America. Federal jurisdiction is invoked solely under the provision of section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), that "suits for violation of contracts between an employer and a labor organization * * * may be brought in any district court * * *."

In determining the essential character of the suit and whether the defendant was entitled to summary judgment we consider the original complaint, proposed amplifying amendments which the plaintiffs have submitted during this appeal,[1] and the pertinent language of a collective bargaining contract between an association of anthracite coal operators (hereinafter, "the operators") and the defendant United Mine Workers (hereinafter, "the union").

The controversy relates to the performance of that part of the labor contract which establishes a trust, Anthracite Health and Welfare Fund; requires the individual operators periodically to pay into the Fund specified amounts per ton of coal produced; prescribes the uses of the Fund to provide sickness, permanent disability, retirement, death and "related welfare" benefits for mine workers, their dependents and survivors, and vests title to all money paid into the Fund and full authority and responsibility for its administration in three trustees, one appointed by the operators, one by the union and a third "neutral person" appointed by the other two.[2]

The complaint alleges that the so-called "royalty" payments which the operators are required to make to the Fund are delinquent by more than $10,000,000. It is further alleged that it is the duty of the union to enforce the operators' obligations to the Fund and that the union has failed to require payments, has discriminated among operators when it did insist upon some payments "and has permitted other breaches." It is also alleged that "the Trustees have been controlled in their decisions by the defendant" and that the trustees and the defendant have knowingly failed to require operators to make payments to the Fund because the trustees and the defendants have chosen to promote the interest of active miners in other provisions of the collective bargaining contract at the expense of the retired miners' interest in the Fund.

---

1. Such amendments may be permitted. See 28 U.S.C. § 1653.

2. Such a trust is expressly sanctioned by section 302(c) of the Labor Management Relations Act. 29 U.S.C. § 186(c).

The complaint ends with the following single prayer for relief:

"Wherefore, plaintiffs demand judgment in favor of the Anthracite Health and Welfare Fund for the benefit of the Class of Pensioned Anthracite Coal Miners and Widows of Deceased Pensioned Anthracite Coal Miners against the defendant United Mine Workers of America in an amount equal to the amount of delinquent royalty payments due the Anthracite Health and Welfare Fund, with interest and costs."

This lone prayer is noteworthy for its disclosure that the union's failure to cause the operators to contribute to the Fund as promised is the only wrong for which redress is sought.

Summarizing the disclosures of the complaint and the labor contract as well as the legal conclusions they require, this suit seeks to enforce an alleged obligation to pay money to trustees for inclusion in the corpus of a duly constituted trust. The primary obligation to finance the Fund is that of the mine operators. Yet the present suit, by plaintiffs who are neither trustees nor parties to the agreement creating the trust, demands payment to trustees, who are not parties to this action,[3] by a defendant union which appears on the face of the agreement creating the trust to be the promisee rather than the promisor of the undertaking to contribute to the trust.

True, the complaint alleges that the labor contract imposes a duty upon the union to cause the payments in suit to be made to the Fund. But this alone is merely the plaintiff's legal conclusion.

Neither the original complaint, the presently proposed amendments, nor anything submitted in briefs or argument points to any provision of the contract in which the union obligates itself to enforce the operator's promise to contribute to the Fund, and our independent study of the contract has disclosed no such provision. Rather, the contract makes explicit the normal obligation of the trustees to "use due diligence and all reasonable means to collect and prevent delinquent obligations of the Fund."[4]

We recognize that the enforcement of collective bargaining agreements under section 301(a) "calls into being a new common law," John Wiley & Sons, Inc. v. Livingston, 1964, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898, which in some aspects is fashioned "from the policy of our national labor laws." Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 456, 77 S.Ct. 912, 918, 1 L.Ed.2d 972. But we find nothing in national labor policy which would justify abrogation of normal conceptions of contract law in order to characterize the union's conduct in failing to compel the operators to carry out their promises to it as a breach of the union's own contractual undertaking.

This does not mean that the conduct attributed to the union is not wrongful. It may well constitute a breach of the union's equitable duty as a fiduciary representative of employees to act in their interest, fairly and in good faith, and without unreasonable discrimination throughout the area in which it has been empowered to function.[5] Cf. Vaca v.

---

3. The trustees originally were joined as involuntary plaintiffs, but on motion of the trustees and the defendant, the district court ordered that the trustees be dropped. As noted *infra*, the trustees should be made parties to this litigation, whether as plaintiffs or defendants.

4. Speaking of a similar trust, the Supreme Court has observed that the employer's "obligation is to contribute sums to the trustees, not its workmen; it is enforceable only by the trustees who enjoy not only the sole title, but the exclusive management of the funds." United States v.

Embassy Restaurant, Inc., 1959, 359 U.S. 29, 33, 79 S.Ct. 554, 556, 3 L.Ed.2d 601. To the same effect, see Lewis v. Quality Coal Corp., 7th Cir. 1957, 243 F.2d 769; Warshaw v. Local No. 415, I.L.G.W.U., 5th Cir. 1963, 325 F.2d 143; Lewis v. Hixson, W.D.Ark.1959, 174 F.Supp. 241, 253.

5. It would not necessarily be a breach of the duty of fair representation to favor active working members over retired members. Roberts v. Lehigh & New England Ry., 3d Cir. 1963, 323 F.2d 219, 223. However, here it is alleged that the un-

Sipes, 1967, 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842; Humphrey v. Moore, 1964, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; Lewis v. Seanor Coal Co., 3d Cir.1967, 382 F.2d 437; Gainey v. Brotherhood of Ry. & S. S. Clerks, 3d Cir.1963, 313 F.2d 318; Note, 65 MICH. L.REV. 373. But this responsibility arises out of the union-employee relationship and pervades it. It is not created by any contract between union and employer, although the bargaining for and the administration of such a contract may supply the context in which the obligation inherent in representative status controls the representative's conduct. Accordingly, though the administration of a labor contract provided an occasion upon which the union's preexisting obligation to serve the plaintiffs came into play, we think that the union's failure to act, wrongful though it may have been, was not "a violation of [a] contract between an employer and a labor organization", the only type of wrong which section 301(a) brings within federal jurisdiction.

The most recent relevant pronouncement of Supreme Court supports our analysis and conclusion. In Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, an employee complained that his union's failure to press a grievance had contributed to his employer's action in discharging him in violation of a labor contract. The court reasoned that, though the employer might be guilty of a breach of the labor contract, the wrong charged to the union was not a violation of the contract but rather a breach of its duty as exclusive bargaining agent to represent plaintiff employee fairly. Moreover, since the National Labor Relations Act conferred this status of exclusive bargaining agent upon the union, the complaint against the union alleged "a breach * * * of a duty grounded in federal statutes, and * * * federal law therefore governs * * * [the] cause of action." 386 U.S. at 177, 87 S.Ct. at 910. Thus, Vaca v. Sipes indicates both that the wrong presently in suit is not a violation of section 301(a) and, at the same time, that the claim may be of federal origin and cognizance, see 28 U.S.C. § 1337, because of its derivation from the National Labor Relations Act.[6]

Vaca v. Sipes is significant here in another connection. In that case the court considered whether an award might properly be made against the union for damages caused by the employer's breach of contract to which the union had contributed. To this question the court gave a negative answer, concluding that "damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." 386 U.S. at 197–198, 87 S.Ct. at 920–921.

The sum of all this is that the present complaint misconceives the legal character of the wrong charged, incorrectly identifies the statutory basis of federal jurisdiction and seeks relief to which the plaintiffs are not entitled as against the defendant. Yet, the complaint discloses what may be a federal wrong and, conceivably, a basis for equitable relief or damages. Under Vaca v. Sipes, supra,

---

ion entered into published contracts that undertake to protect the interests of retired workers, while the union secretly acted to the contrary. Such facts, if proven, would raise a serious question as to whether the union had breached its duty of fair representation.

6. Mr. Justice Goldberg, concurring in Humphrey v. Moore, 1964, 375 U.S. 335, 351, 84 S.Ct. 363, 11 L.Ed.2d 370, charged the majority in that case with converting the fair representation duty into a contractual duty. This assertion was rejected in Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842. However, the majority adhered to its position as taken in Humphrey v. Moore that, because of the intricate relationship between certain duty of fair representation claims and section 301 contract claims, the jurisdiction of courts over fair representation claims was not preempted by the possible jurisdiction of the NLRB over such claims.

damages might be recoverable if, as a result of the defendant's alleged failure to insist on operator contributions, it is no longer possible to collect delinquent payments in full from all operators.

 Finally, we think the trustees of the Fund are necessary parties to this suit.[7] If an amended complaint is filed, they should be joined.

The order denying summary judgment will be vacated and the cause remanded with instructions to allow the plaintiffs a reasonable time to amend their complaint to state a claim upon which relief can be granted under the foregoing analysis and to join the trustees as necessary parties.

Neither party shall be awarded costs as against the other on this appeal.