545 F.2d 1248
 94 L.R.R.M. (BNA) 2014, 79 Lab.Cas. P 11,775
 HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL
UNION, AFL-CIO, Petitioner-Appellant,
v.
MICHELSON'S FOOD SERVICES, INC., a California Corporation,
and Larry Manning, Respondents-Appellees.
 No. 74-2994.
 United States Court of Appeals,
Ninth Circuit.
 Nov. 29, 1976.
 
 Lester Ostroz (argued), Los Angeles, Cal., for petitioner-appellant.
 Jeffrey C. Freedman (argued), of Nelson, Kirshman, Goldstein, Gentile & Rexon, Los Angeles, Cal., for respondents-appellees.
 Before DUNIWAY and WALLACE, Circuit Judges, and RICHEY,* District judge.
 DUNIWAY, Circuit Judge:
 
 
 1
 The Hotel and Restaurant Employees Union appeals from the district court's denial of its petition to enforce an interim arbitration award. We reverse and remand.
 
 
 2
 This case arises out of a grievance against Michelson's Food Services by Manning, one of its employees, who claims that Michelson's failed to pay him over $30,000 due him under a labor agreement for work performed during the period from January 1, 1965, to May 15, 1971. Manning first filed a written grievance with the Union, the exclusive bargaining representation of Michelson's employees, and on September 28, 1972, at Manning's request, the Union filed a written notice of that grievance with Michelson's.
 
 
 3
 At all relevant times there was a collective bargaining agreement in effect between the Union and Michelson's which governed the "wages, hours, and working conditions" of the employees represented by the Union. The agreement created a three-step dispute resolution procedure. It provided that first the employer is to be notified of any grievance and given an opportunity to rectify it. If the employee remains dissatisfied, representatives of the Union and Michelson's must seek to resolve the dispute. If that fails, either party, that is, the Union or Michelson's, can demand that the dispute be submitted to binding arbitration. The contract makes an arbitration award binding on the parties (Union and employer) "and upon any employees concerned."
 
 
 4
 Manning's grievance followed this procedure, and after the Union and management negotiators were unable to resolve the dispute, the Union demanded final and binding arbitration. The two parties chose Mr. Edgar A. Jones, Jr., as the arbitrator, and the hearing was convened on July 17, 1973. On that day Manning personally appeared at the hearing with his own counsel, and for the first time, through his counsel, accused the Union of conspiring with Michelson's to deny him and other similarly situated employees the compensation due them, and insisted that the Union could not fairly represent his interests. His counsel suggested that the Union be joined with Michelson's as defendant in the arbitration proceeding, that the arbitrator be empowered to award punitive as well as compensatory damages, against either or both, and that Manning be allowed to represent the entire class of similarly situated employees. Manning's attorney said that he thought that the entire matter was one that could be best handled in the courts, and that he intended to file a class action against both the Union and Michelson's if Manning's demands were not agreed to. Whether such a suit has been filed does not appear.
 
 
 5
 The Union then stated that it was willing to let Manning and his own counsel handle his case, but it said nothing about its willingness to submit itself to potential compensatory and punitive damages in the arbitration. Michelson's said that it would not agree to a class action inasmuch as it was prepared only to defend against Manning's individual grievance. Additionally, it was unwilling to submit to arbitration unless Manning agreed to be bound by the arbitrator's decision, something that Manning consistently refused to do. In light of this confusion, the arbitrator dismissed the witnesses and adjourned the hearing overnight so that the three parties could try to reach some procedural accord.
 
 
 6
 The next morning the hearing was reconvened, but the procedural dispute was unresolved. As a result, Mr. Jones requested that each of the three parties sign a submission agreement leaving to him the decision as to how the arbitration would proceed. When only the Union expressed willingness to sign such an agreement, the hearing adjourned with no resolution in sight.
 
 
 7
 After receiving some correspondence from each party, the arbitrator finally took it upon himself to resolve the procedural logjam. On August 9, 1973, he rendered the interim award that is the subject of this appeal. Therein, he decided: (1) that Manning be designated as a "party" to the arbitration, and that Manning would be bound by the decision; (2) to allow any Michelson's employees similarly situated with Manning to join in the proceeding against the Union and Michelson's upon giving due notice and agreeing to be bound; (3) that provision should be made for award of punitive damages, costs, and attorney's fees against either of the party defendants "should such be deemed appropriate by the arbitrator;" (4) to direct the Union to petition a court for enforcement of the interim award; and (5) that should the court find that Manning could not be made a "party" to the proceeding, then the entire dispute would not be arbitrable.
 
 
 8
 As directed by the arbitrator, the Union filed this action to enforce the award in California Superior Court, and Michelson's removed the case to the federal district court. Michelson's opposed the petition. Manning, in his answer to the petition, asked for enforcement of the award. Later, in a memorandum, he modified his position. He opposed the enforcement of the award because he was unable to decide whether the Union's representation was acceptable without seeing the Union's file, which the Union had declined to let him see. He offered to be bound by the arbitrator's award as against Michelson's, but declined to be bound as to his claim against the Union. He asked affirmance of the award "as it affects the claim of Manning against Michelson's and Union against Michelson's, but not as to his claim against the Union." The court denied the petition in its entirety on the ground that the interim award was outside the scope of the arbitrator's authority. Manning has made no appearance and has filed no brief in this appeal.
 
 
 9
 Essentially, what the interim award does is to set the framework for, and order, arbitration of two underlying disputes, one between Manning and Michelson's, and the other between Manning and the Union. As to Manning's claims of conspiracy to defraud and failure to adequately represent which he makes against the Union, the award exceeded the scope of the arbitrator's authority. There is no agreement between Manning and the Union to arbitrate such a dispute. The only possible source of such authority would be the arbitration clause in the collective bargaining agreement, and that clause does not provide any such authority.
 
 
 10
 We recognize that "(a)n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409.
 
 
 11
 The dispute between Manning and the Union, however, is not within the scope of the collective bargaining agreement. The agreement is one between the Union as agent for employees and the employer not between the Union and the employees. There is not and cannot be a claim by Manning that the Union breached a duty created by the agreement. The duty of fair representation is created by the relationship of the Union to its members. Nedd v. United Mine Workers of America, 3 Cir. 1968, 400 F.2d 103, 105-06. "(A) party cannot be required to submit to arbitration any dispute that he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. at 582, 80 S.Ct. at 1353.
 
 
 12
 On the other hand, under the National Labor Relations Act, the Union is the sole agent of the employees for collective bargaining with the employer. As such it can bind itself and its members by a collective bargaining agreement, to arbitration of disputes arising under the agreement. This is what happened here. As a result, both the Union and Michelson's are bound to arbitrate Manning's grievance. Moreover, because the Union is Manning's agent in the making, the performance, and the enforcement of the agreement, Manning is bound by the agreement to arbitrate. Republic Steel Corp. v. Maddox, 1965, 379 U.S. 650, 652-53, 85 S.Ct. 614, 13 L.Ed.2d 580.
 
 
 13
 It follows that ordinarily Manning cannot take his claim against the employer to court if he has not given the Union a chance to take it to arbitration. Republic Steel Corp. v. Maddox, supra. Furthermore, after the Union has pressed his grievance to the extent that it believes proper, an employee's action in court grounded on a charge that the Union has not acted in good faith on his behalf, or that the Union has been in collusion with the employer, will fail if he does not prove his charge. Vaca v. Sipes, 1967,386 U.S. 171, 191-93, 87 S.Ct. 903, 17 L.Ed.2d 842. There, the Court held that the Union's good faith decision that the member's grievance lacked sufficient merit to take it to arbitration defeated the member's subsequent lawsuit against the Union, even though, in that suit, the Court concluded that the member's grievance did have merit. See also Humphrey v. Moore, 1964,375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370.
 
 
 14
 Although the usual procedure in an arbitration under a collective bargaining agreement is to name the Union and the employer as parties, but not the employee whose grievance is involved, the employee may be made a party. Applying the principle announced in John Wiley & Sons v. Livingston, 1964, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898, that "procedural questions should be left to the arbitrator," we have held that "the question whether a given grievance may be processed by a . . . bargaining agent . . . or by the employee, can only be characterized as a procedural matter." Ass'n of Industrial Scientists v. Shell Develop. Co., 1965, 348 F.2d 385, 389. Thus, in this case Manning could ask to be made a party, and the arbitrator could have granted that request. Indeed, the arbitrator has done so.
 
 
 15
 We conclude that the arbitrator could designate Manning as a party, whether or not Manning asked to be so designated. The arbitrator could not force Manning to participate, but he could still proceed, and could make an award for or against Manning. That award would bind Manning, absent exceptional circumstances, such as fraud, breach of duty of fair representation, and the like, even if he objected or declined to participate.
 
 
 16
 In this case, however, Manning asserted that the Union had not properly represented him, and would not properly represent him in the arbitration. Michelson's argues that, under these circumstances, it would not be proper to require that the arbitration proceed. We do not agree. To hold as Michelson's asks us to do would be contrary to the spirit, if not the letter of the decision in Vaca v. Sipes, supra. Here, as there, the Union contends that it has acted, is acting, and will act in good faith. Moreover, as a party, Manning can participate fully, in person and by counsel, and protect his own interests. See Humphrey v. Moore, supra, 375 U.S. at 350, 84 S.Ct. 363. If thereafter, with or without such participation, an award is made, it will be prima facie binding. Manning can then proceed to court and there attack the award on the ground that it was the result of the Union's bad faith, fraud, or collusion. If he loses on that issue, that will terminate his case. Vaca v. Sipes, supra. Only if he wins on that issue will the court be required to consider the merits of his claim. Whether or not he could bring a class action, or recover punitive damages or attorney's fees in such a case, we leave to another day.
 
 
 17
 The cases upon which Michelson's relies are not to the contrary. In Lusk v. Eastern Products Corp., 4 Cir., 1970, 427 F.2d 705, the grievances of certain dissident members of the union went to arbitration under the collective bargaining agreement. The dissidents participated in the proceedings. In his award, the arbitrator rejected the grievance and also held that the union had properly represented the grievants. After the award was made, a pending action by the dissidents against the employer and the union was dismissed. The court upheld the dismissal on the ground that the allegations of the complaint were conclusory. The court also said that the claim of conspiracy between the employer and the union to deprive members of their rights was not subject to compulsory arbitration under the collective bargaining agreement. We agree, but we also note that the court did not say or hold that the employees' grievance, based upon the contract, was not subject to the arbitration clause. In Wagner v. Columbia Hospital District, 1971, 259 Or. 15, 485 P.2d 421, in an action by an employee charging that the union and the employer had conspired to discharge her in violation of her constitutional right to religious freedom and her rights under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and ORS 659.020 and 659.030, the court held that it was error to abate the action, thus requiring her to seek arbitration, through the union, under a collective bargaining agreement. That question is not before us. We note that the court said nothing about the possibility of the employee herself becoming a party to the arbitration. Moreover, the claim in Wagner was not based on the collective bargaining agreement. Glover v. St. Louis-S.F. Ry. Co., 1969, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519, is similar, but involved racial, rather than religious, discrimination.
 
 
 18
 Desrosiers v. American Cyanamid Company, 2 Cir., 1967, 377 F.2d 865, 870-71, and Hiller v. Liquor Salesmen's Union Local No. 2, 2 Cir., 1964, 388 F.2d 778, are different. In each case, the employee charged the union with a breach of its duty of fair representation and charged the employer with conspiring with the union in its commission of the breach. In each, it was held that the action should not be abated pending arbitration of the employee's claim of violation of the collective bargaining contract. The essence of the holding in each case is that the breach of the duty of fair representation, and the conspiracy to commit it, are not arbitrable under the collective bargaining contract. We agree. The claims are not based on a mere breach of that contract; they rest upon duties imposed by law, not duties imposed by the contract. It does not follow from these cases that arbitration under the contract cannot proceed. That arbitration, if it proceeds, will result in a binding award if the employee, in his lawsuit, fails to prove his charges of breach of duty of fair representation and conspiracy. If he fails in that proof, his recourse in the courts will be gone and the award will control.
 
 
 19
 It is not necessary that there be a separate agreement between the Union and Michelson's, or between them plus Manning, to submit the specific grievance to arbitration. The collective bargaining agreement itself is such an agreement. If any party refused to proceed, resort could be had to a court to compel arbitration, grounded on the collective bargaining agreement alone. Here, the Union was pressing the grievance, an arbitrator had been selected, the Union and Michelson's had appeared before the arbitrator, ready to proceed, and Manning and his counsel were present. The arbitrator had power to proceed, and that power included the power to make Manning a party. Manning's attempt to condition his participation did not deprive the arbitrator of his powers. Nor did it enlarge them. See Avon Products Inc. v. International Union, UAW, AFL-CIO, Local 710, 8 Cir., 1967, 386 F.2d 651, 656; Independent Soap Workers v. Procter & Gamble Mfg. Co., 9 Cir., 1963, 314 F.2d 38, 43. Manning's attempt to exercise the prerogative of the small boy who owns the baseball and takes the ball home if he cannot make the rules must fail.
 
 
 20
 However, we cannot hold that it was within the arbitrator's authority to transform the proceeding into a sort of class action on behalf of all employees of Michelson's who were similarly situated to Manning. The collective bargaining agreement, which defines the scope of the arbitration, does not permit bringing the other employees in for the first time at the arbitration stage. No doubt the Union could have presented a grievance, from the beginning, on behalf of all Michelson's employees similarly situated. See Tobacco Workers Int. U. Local 317, AFL-CIO v. Lorillard Corp., 4 Cir., 1971, 448 F.2d 949, 954. But the agreement does not require that it do so, and it did not do so. Nor did Manning ask that it do so. Thus the only dispute ripe for arbitration, and the only dispute that the parties were required to arbitrate, was the individual grievance of Manning.
 
 
 21
 Nor can we say that the arbitrator could award punitive damages. It may be that, if a grievant claims such damages from the beginning, and that claim is processed through all stages required by the agreement, the arbitrator can consider it. But here that did not happen. Manning's claim, as presented by him to the Union, and as presented by the Union to Michelson's contained no such demand. This is equally true of the demand for attorney's fees and costs. Manning made no such claims until the day that the arbitration was to begin. To allow them was not within the arbitrator's power; it was not part of the grievance that had been presented to the employer under the agreement and carried through the first two stages required by the contract. The employer was entitled to rely on the grievance presented as limiting the extent of the question that it was required to arbitrate if it could not arrive at a settlement. However, lest there be any misunderstanding, we are not holding that an arbitrator is bound to limit his decision to the precise measure of relief requested in the original grievance. His job is to define the relief that will compensate the grievant if his claim is upheld. See Tobacco Workers Int. U. Local 317 v. Lorillard Corp., supra, 448 F.2d at 955-56. What we do say is that the remedies here claimed are not usually appropriate in breach of contract cases (see Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co., 3 Cir., 1962, in banc, 298 F.2d 277, 281 (283 Biggs, J., dissenting; 285, Kalodner, J., dissenting)) and that such extraordinary remedies are not available at the arbitration stage unless they have been put in issue from the beginning. We express no opinion as to what the arbitrator's powers would be in such a case; it is not before us.
 
 
 22
 In endeavoring to come to a decision in this case, we have found it quite impossible to reconcile everything that has been said by various courts about whether arbitration of a grievance under the collective bargaining agreement can go forward in the face of a claim by the grievant that the Union has breached its duty to represent him fairly and in good faith, and has colluded with the employer to deny him his rights. It is plain to us that many courts would answer the question "No." We think, however, that to give such an answer in this case would be contrary to the spirit, if not the letter, of the decisions in Vaca v. Sipes, supra, and Humphrey v. Moore, supra, and would not advance the purposes of the decisions in the Steelworkers Trilogy, 1960, 363 U.S. 564, 574, and 593, 80 S.Ct. 1343, 1347, and 1358, 4 L.Ed.2d 1403, 1409, and 1424. An employee who has a grievance, presents it to his Union, and has the Union carry it through the procedures required by the collective bargaining agreement, up to and including the commencement of arbitration, should not be able to terminate the proceeding merely by appearing at the arbitration and having his attorney assert for the first time that the Union is not properly representing him and is in cahoots with the employer. Nor should he be able to terminate the proceeding by asserting, at that time, that he will not consider himself bound by the decision and will not participate unless the Union and the employer agree that the proceeding is to be turned into a class action and one in which punitive damages and attorney's fees can be awarded. To permit Manning to accomplish what he (or more probably, his counsel) has set out to accomplish here would be to frustrate the purposes of the grievance procedures in the agreement and the purposes of industrial arbitration under such an agreement as expounded in the Trilogy.
 
 
 23
 All that we hold in this case is:First, that the arbitration provided for in the agreement, an arbitration of Manning's grievance, between the Union and the employer, with Manning as a designated party, should go forward, and
 
 
 24
 Second, that the arbitration should be limited, as we have outlined in this opinion, to Manning's grievance, and to such remedies as are usual in such a case.
 
 
 25
 We express no opinion as to what the effect of an award may be on any lawsuit that Manning may choose to file or as to what the effect of a judgment in such a case may be upon whatever award may be made.
 
 
 26
 We recognize that to have the arbitration proceed when the grievant is asserting, perhaps in a simultaneously pending lawsuit, that the Union and employer are acting in bad faith, is not a happy solution. The difficulty is present because the grievance arises from the contract, while Manning's assertions of bad faith and conspiracy do not rest upon the contract. Nedd v. United Mine Workers of America, supra, 400 F.2d at 105. But we think that it is better to proceed than to permit a grievant, like Manning, whose claim has been processed without objection to the commencement of arbitration, to terminate the proceeding by coming in and merely asserting, for the first time, bad faith on the part of the Union and the employer. We say nothing as to what our decision might be in a different case.
 
 
 27
 The judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation